UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DR. HUIAI YANG,

Plaintiff,

-against-

THE DEPARTMENT OF EDUCATION OF THE CITY
OF NEW YORK and THE BOARD OF EDUCATION
OF THE CITY SCHOOL DISTRICT OF NEW YORK,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street, Room 2-173*
*New York, N.Y. 10007*

*Of Counsel: Tanya N. Blocker*
*Tel: (212) 356-3177*
*Matter No.: 2014-041116*

Tanya N. Blocker,
Bruce Rosenbaum,
 Of Counsel.

Shirley Bi,
Summer Student Intern,
 On the Brief.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS .................................................................................... 2

ARGUMENT ........................................................................................................ 8

    POINT I ......................................................................................................... 8

        THE COMPLAINT IS BARRED, IN PART, BY
        THE APPLICABLE STATUTE OF
        LIMITATIONS ........................................................................................... 8

    POINT II ........................................................................................................ 9

        THE COMPLAINT FAILS TO STATE A
        PLAUSIBLE CLAIM OF NATIONAL ORIGIN
        DISCRIMINATION UNDER TITLE VII ................................................. 9

        A.   Applicable Pleading Standards ........................................................ 10

        B.   Plaintiff Has Failed To Plead Sufficient Facts
             To Establish A Plausible Claim Of Disparate
             Treatment Discrimination ................................................................ 11

        C.   BOE's Legitimate, Nondiscriminatory Reason
             For Plaintiff's "U" Rating and Termination ..................................... 18

    POINT III ....................................................................................................... 20

        THE COMPLAINT FAILS TO PLAUSIBLY
        STATE A CLAIM FOR A HOSTILE WORK
        ENVIRONMENT ...................................................................................... 20

CONCLUSION ..................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Aschcroft v. Iqbal,*

    556 U.S. 662, 129 S. Ct. 1937 (2009) ................................................................. 10

*Beauchat v. Mineta,*

    257 Fed. Appx. 463 (2007) ................................................................................... 12

*Bell Atl. Corp. v. Twombly,*

    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................ 10, 11

*Bermudez v. City of New York,*

    783 F. Supp. 2d 560 (S.D.N.Y. 2011) ................................................................... 17

*Bickerstaff v. Vassar College,*

    196 F.3d 435 (2d Cir. 1999) ................................................................................. 15

*Bickerstaff v. Vassar College,*

    354 F. Supp. 2d 276 (S.D.N.Y. 2004) ................................................................... 21

*Brown v. Henderson,*

    257 F.3d 246 (2d Cir. 2001) ................................................................................. 20

*Carlton v. Mystic Transp., Inc.,*

    202 F.3d 129 (2d Cir. 2000) ................................................................................. 19

*Cruz v. Coach Stores, Inc.,*

    202 F.3d 560 (2d Cir. 2000) ................................................................................. 12

*Daniel v. T&M Prot. Res. LLC,*

    No. 13 CIV 4384, 2015 U.S. Dist. LEXIS 20051 (S.D.N.Y. Feb. 19, 2015) ............. 19, 20, 21

*Danzer v. Norden Sys.,*

    151 F.3d 50 (2d Cir. 2001). ................................................................................. 14

*De La Peña v. Metro. Life Ins. Co.,*

953 F. Supp. 2d 393 (E.D.N.Y. 2013) ................................................................................ 14

*Deprima v. City of New York Dep't of Educ.*,

No. 12 CV 3626 (MKB), 2014 U.S. Dist. LEXIS 37866 (E.D.N.Y. Mar. 20, 2014)............... 16

*Elec. Comm. Corp. v. Toshiba America Consumer Prods.*, Inc.,

129 F.3d 240 (2d Cir. 1997) ................................................................................................ 10

*Fleming v. MaxMara USA, Inc.*,

371 Fed. App'x 115 (2d Cir. 2010) ...................................................................................... 21

*Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

459 U.S. 519 (1983)............................................................................................................. 11

*Gobin v. N.Y. City Health & Hosp. Corp.*,

2006 U.S. Dist. LEXIS 48952 (S.D.N.Y. July 19, 2006) ....................................................... 8

*Gonzales v. Allied Barton Sec. Servs.*,

No. 08-Civ-9291 (RJS) (RLE), 2010 U.S. Dist. LEXIS 101846 (S.D.N.Y.  Sept. 7,
2010) ................................................................................................................................... 14

*Hawkins v. City of N.Y.*,

No. 99-Civ-11704 (RWS), 2005 U.S. Dist. LEXIS 15898 (S.D.N.Y. Aug. 8, 2005) ............. 18

*Hernandez v. Kellwood Co.*,

2003 U.S. Dist. LEXIS 17862 (S.D.N.Y. Oct. 8, 2003) .......................................................... 8

*Jackson v. County of Rockland*,

450 Fed. Appx. 15 (2d Cir. 2011)......................................................................................... 17

*James v. Countrywide Fin. Corp.*,

849 F. Supp. 2d 296 (E.D.N.Y. Feb. 2, 2012) ...................................................................... 12

*Missick v. City of New York*,

707 F. Supp. 2d 336 (E.D.N.Y. March 22, 2010).................................................................. 15

*Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*,

815 F. Supp. 2d 679 (S.D.N.Y. Sept. 26, 2011) ................................................................... 16

*Murphy v. Suffolk Cnty. Cmty. Coll.*,

No. 10-CV-0251, 2011 U.S. Dist. LEXIS 136983, 2011 WL 5976082 (E.D.N.Y. Nov. 29, 2011) ................................................................................................ 11

*National Railroad Passenger Corp. ("AMTRAK") v. Morgan*,

536 U.S. 101 (2002) ............................................................................................ 8

*Papasan v. Allain*,

478 U.S. 265 (1986) .......................................................................................... 11

*Ray v. Weit*,

No. 13 CV 6416 (RRM) (CLP), 2015 U.S. Dist. LEXIS 35410 (E.D.N.Y. Mar. 20, 2015) ........................................................................................... 11, 12, 17

*Richardson v. New York State Dep't of Corr. Serv.*,

180 F.3d 426 (2d Cir. 1999). ............................................................................ 20

*Ricks v. Conde Nast Publs.*,

6 Fed. App'x 74 (2d Cir. 2001) ........................................................................ 15

*Risco v. McHugh*,

868 F. Supp. 2d 75 (S.D.N.Y. June 14, 2012) ................................................. 17

*Ruane v. Cont'l Cas. Co.*,

No. 96 Civ. 7153 (LBS), 1998 U.S. Dist. LEXIS 8141 (S.D.N.Y. June 3, 1998) .................... 19

*Ruiz v. Cnty. of Rockland*,

609 F.3d 486 (2d Cir. 2010) ...................................................................... 11, 12

*Shallow v. Scofield*,

No. 11-CV-6028 (JMF), 2012 U.S. Dist. LEXIS 135697 (S.D.N.Y. Sept. 21, 2012) ............. 11

*Terry v. Ashcroft*,

336 F.3d 128 (2d Cir. 2003 ........................................................................ 18, 20

*Tewksbury v. Ottaway Newspapers, Inc.*,

192 F.3d 322 (2d Cir. 1999) .............................................................................. 8

iv

*Thompson v. City of New York*,

    No. 12 CV 8034 (PAE), 2013 U.S. Dist. LEXIS 172993 (S.D.N.Y. Dec. 9, 2013)..... 12, 16, 17

*Tomassi v. Insignia Fin. Grp., Inc.*,

    478 F.3d 111 (2d Cir. 2007) ................................................................................. 13

*Tsang-Adler v. City of New York*,

    12 CV 394 (SJ) (MDG), 2013 U.S. Dist. LEXIS 53229 (E.D.N.Y. April 12, 2013) .............. 12

*Tu v. Oppenheimerfunds, Inc.*,

    No. 10 Civ 4971 (PKC), 2012 U.S. Dist LEXIS 19867 (S.D.N.Y. Feb. 16, 2012)................. 15

*Valtchev v. City of N.Y.*,

    No. 06-CV-7157 (NRB), 2009 U.S. Dist. LEXIS 79815 (S.D.N.Y. Aug. 31, 2009)............. 13

*Van Zant v. KLM Royal Dutch Airlines*,

    80 F.3d 708  (2d Cir. 1996) ................................................................................... 20

**Statutes**

42 U.S.C. § 2000................................................................................................. 1, 8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

DR. HUIAI YANG,

                                    Plaintiff,

                                                        14 Civ. 07037 (SLT) (RLM)

            -against-

THE DEPARTMENT OF EDUCATION OF THE
CITY OF NEW YORK and THE BOARD OF
EDUCATION OF THE CITY SCHOOL DISTRICT
OF NEW YORK,

                                    Defendant.
------------------------------------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

### PRELIMINARY STATEMENT

Plaintiff Huiai Yang ("Plaintiff"), a former school psychologist employed by Defendant the Board of Education of the City School District of the City of New York (hereinafter "BOE" or "Defendant") (also known as and sued herein as the "The Department of Education of the City of New York and The Board of Education of the City School District of the City of New York"), commenced this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, alleging disparate treatment and hostile work environment claims as a result of her Chinese national origin in connection with her supervisor's evaluation of her job performance and the decision to discontinue her probationary service in June 2013.

Plaintiff commenced this action by filing both an initial and an amended complaint in the Supreme Court of the State of New York, Kings County, asserting the

aforementioned Title VII claim.[1]  At Defendant's request, this action was removed to this Court

on December 3, 2014, pursuant to 28 U.S.C. § 1441(a).  *See* 14 CV 07037 Docket ("Dkt.") No.

1.  On March 6, 2015, Plaintiff filed an Amended Complaint (the "Amend. Compl.").[2]

Defendant now seeks to dismiss the Amended Complaint in its entirety pursuant to Federal Rules

of Civil Procedure ("FRCP") Rule 12(b)(6), as the claims asserted in the Amended Complaint

are time-barred in large part and because Plaintiff has otherwise failed to plausibly allege facts to

state a cognizable claim for disparate treatment and a hostile work environment.

## STATEMENT OF FACTS[3]

Plaintiff identifies herself as a person of Chinese origin.  *See* Amend. Compl.

dated March 6, 2015, at ¶ 6 (pg. 2).[4]  In or about October 2009, Plaintiff began her employment

---

[1] Plaintiff's Original Summons and Complaint and Amended Complaint are dated November 10, 2014 and bear New York State Supreme Court Kings County Index No. 510574/2014.

[2] Pursuant to Your Honor's Individual Practices, on or about January 26, 2015, Defendant requested a pre-motion conference to obtain leave to move to dismiss Plaintiff's Amended Complaint, dated November 10, 2014 on the grounds that Plaintiff had failed to state a claim upon which relief could be granted.  *See* 14 CV 07037 Docket ("Dkt.") No. 7.  On February 6, 2015, this Court granted Plaintiff's February 2, 2015 request for leave to amend the November 14, 2014 complaint (Dkt. Nos. 9 - 10).  Consequently, Plaintiff filed what theoretically is a second amended complaint, but entitled it the "Amended Complaint."  For clarity, Defendant BOE will refer to the present complaint as the Amended Complaint.

[3] Pursuant to FRCP Rule 12(b)(6), Plaintiff's allegations are assumed to be true for purposes of this motion to dismiss only.  In addition to the allegations in Plaintiff's complaint, this statement of facts relies upon the document annexed to Defendant's motion to dismiss.  *See* exhibit annexed to the Declaration of Tanya N. Blocker dated June 26, 2015 ("Blocker Decl.") which accompanies this memorandum of law.  This Court may consider this document in reviewing this motion.  *See Chambers v. Time Warner*, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (court resolving motion to dismiss can consider: (1) documents that plaintiff attached to the pleadings; (2) documents to which plaintiff referred in the complaint; (3) matters of which judicial notice may be taken; (4) documents in plaintiff's possession; and (5) documents of which plaintiff had knowledge and upon which plaintiff relied in bringing the action); *Lakonia Management Ltd. v. Meriwether*, 106 F. Supp. 2d 540, 543 (S.D.N.Y. 2000) (the Court also may properly consider any document attached to the complaint as an exhibit or incorporated in it by reference, as well as matters of public record of which it can take judicial notice).

with the BOE as a school psychologist assigned to three BOE schools, PS198M (Plaintiff's payroll school), PS77M (a co-located school with PS198M) and PS721/M (a specialized school for high school students). *See* Amend Compl. ¶¶ 4 – 6 (pg. 2), ¶ 8 (pg. 2), ¶ 9. Plaintiff acknowledges that during her tenure with BOE she was a probationary employee. *Id*. ¶ 32. On Mondays and Tuesdays, Plaintiff was assigned to PS721M and the remainder of the week PS198/77M. *Id*. ¶ 8 (pg. 2). While assigned to her payroll school, Plaintiff alleges that the Principal of PS198M, Sharon Roeburk ("Principal Roeburk"), remained her "rating officer for the 2009, 2010, 2011 . . ." *Id*. Plaintiff claims Nancy Emerick (Cabrero) ("Principal Emerick"), who assumed the leadership role as Principal of PS198M for the 2012 – 2013 school year, was not Plaintiff's rating officer between 2009 - 2011. *Id.* Also, between 2009 through 2011, Plaintiff alleges School Supervisor of School Psychologists Dr. Ellen Fleishman ("Dr. Fleishman"), was her psychologist supervisor at PS721M, and beginning in 2011, assumed the same role over Plaintiff at PS77M. Amend Compl. ¶ 6 (pgs. 2 -3). Plaintiff identifies Dr. Fleishman as Jewish and Caucasian and Principal Emerick as Hispanic Puerto Rican. *Id.* ¶¶ 15, 17 – 18. However, Plaintiff does not identify the race/nationality of the Principal of PS77, Mara Ratesic Koetke ("Principal Koetke'). *See* Amend. Compl. *generally*.

Plaintiff alleges that while assigned to PS198M and PS77M, Principal Koetke and Dr. Fleishman subjected her to disparate treatment and a hostile work environment, in that she received biased memos, letters, observations, disciplines and annual reviews and was subjected to demeaning, discriminatory comments, "micro management and microscopic scrutiny." *Id.* ¶¶ 8 (pg. 3), ¶ 13. Plaintiff asserts that school psychologist and Plaintiff's alleged colleague, Dr.

---

[4] The Amended Compl. contains mis-numbered paragraphs. Specifically, the amended complaint contains two sets of paragraphs numbered 6 - 8. For clarity, when referencing these paragraphs Defendant will identify the page number and paragraph.

Ronna Rosen ("Dr. Rosen"), whom Plaintiff identifies as "Jewish Caucasian," "had clear preferential treatment" in that: Dr. Rosen resided in a larger air-conditioned office—while Plaintiff shared a smaller office, and Dr. Rosen was not assigned to door monitoring duties during fire-drills, while Plaintiff was assigned to such tasks. *Id.* ¶ 31.

Plaintiff alleges that during the 2011 - 2012 school year Principal Koetke (PS77), despite having knowledge that Plaintiff worked in the adjoining office and over Plaintiff's objection, designated the office adjacent to Plaintiff's as a music room. *Id.* ¶ 15. In addition, Plaintiff contends that Principal Koetke, although working with Plaintiff while at PS77, "terminated Plaintiff on her (Principal Koetke's) first year as Principal of PS198M." *Id.* ¶ 28. Plaintiff also contends that during her probationary period, she received unsatisfactory formal observations and an annual performance evaluation in 2013, after receiving three satisfactory annual performance evaluations in the prior years. *Id.* ¶¶ 6 (pgs. 2 – 3), 9.

With respect to alleged derogatory and humiliating comments made about Plaintiff's Chinese accent, Plaintiff contends that on one occasion Dr. Fleishman, when speaking to Plaintiff, ended her sentence with ". . . it's because you are Chinese," and allegedly pointed out Plaintiff's accent stating: "Say it louder!" and ". . . it's because you are Chinese" at meetings before Plaintiff's colleagues. *Id.* ¶ 10.

On or about June 2013, Plaintiff's probationary service was discontinued and her employment subsequently terminated. *Id.* ¶¶ 9, 32. The events that Plaintiff alleges led up to her termination are enumerated below.

## 1. The 2011 - 2012 School Year

On or about November 4, 2011, Plaintiff alleges that she was "biased[ly] disciplined" by her supervisor, Dr. Fleishman and Principal Koetke (PS77M) for not providing a copy of a procedural safeguards guide to parents and students upon request. *See* Amend. Compl.

¶ 17. Plaintiff does not allege that any discriminatory animus concerning her Chinese origin , but rather that the distribution of such guide was not the sole responsibility of the school psychologist. *Id.* Plaintiff claims the discipline resulted in a reprimand letter. *Id.*

Plaintiff alleges that, although part-time at PS198M, she "was given the highest amount of cases (more or about the same as the other non-Chinese school psychologist who worked full time) and the most difficult." Amend Compl. ¶ 19. On or about February 6, 2013, Plaintiff alleges receiving a "letter falsely accusing her of having a lack of diligence," thereby putting a student's placement in jeopardy. *Id.*

For the 2011 - 2012 school year, Plaintiff received two unsatisfactory formal observation reports on or about December 9, 2011 and March 22, 2012, respectively. *See* Amend. Comp. ¶ 6 (pgs 2 – 3). Regarding the December 9, 2011 observation, Plaintiff alleges that Dr. Fleishman humiliated her in front of all her colleagues by casting her as "incompetent" during an Educational Planning Conference ("EPC") with a student and the student's family. Amend. Compl. ¶ 18. The observation resulted in an unsatisfactory rating. *Id.* Further, Plaintiff alleges that although Dr. Fleishman indicated that in addition to her observation, school psychologist Dr. Rosen" would also be observed, only Plaintiff was observed on that day. *Id.* ¶ 18. Plaintiff alleges it was Dr. Rosen's responsibility (as the full time psychologists) to divide all cases for both PS198M and PS77M among the two, but that Principal Koetke "belatedly [] purposefully assigned the hardest cases to Plaintiff and [] had Dr. Fleishman observe[] Plaintiff." *Id.* ¶ 15.

On or about March 22, 2012 Dr. Fleishman conducted an observation of Plaintiff in which Plaintiff was rated as unsatisfactory. *Id.* ¶ 6 (pgs. 2 – 3), ¶ 12. During a meeting to discuss Plaintiff's performance and the unsatisfactory rating, Plaintiff alleges that Dr. Fleishman

"was rude and very impatient," "frequently asked Plaintiff to repeat" herself, and "pointed out a sentence (written by Plaintiff) and indicated that it was written poorly." Amend. Compl. ¶ 12. Upon Plaintiff indicating that Dr. Fleishman "misread" the sentence, Dr. Fleishman re-read it and allegedly attributed the misunderstanding to "the English Plaintiff used." *Id*.

At the end of the 2011 - 2012 school year, tenure was not offered to Plaintiff; rather, an extension of Plaintiff's probationary service was recommended by then Principal Roebuck (PS198M) and Principal Koetke.

2. **The 2012 - 2013 School Year**

During the 2012 - 2013 school year, Plaintiff received three more unsatisfactory formal observational reports. *See* Amended Comp. ¶ 6 (pgs. 2 – 3). Plaintiff alleges that her unsatisfactory rating from Dr. Fleishman in connection with the December 14, 2012 observation was "patently false" in finding that Plaintiff had not incorporated basic suggestions previously recommended and had not controlled the meeting or finalized relevant meeting documents in a timely fashion. *See* Amend. Compl. ¶ 22.

On or about January 24, 2013, Plaintiff received a second unsatisfactory observation report by Dr. Fleishman. *See* Amended Comp. ¶ 23. Without identifying any statements or references to Plaintiff's Chinese heritage, Plaintiff contends in conclusory fashion that the "'U' rating was biased and discriminatory." *Id*. Plaintiff alleges that the reasons given for the unsatisfactory rating—reiterating Plaintiff's prior criticisms of a "lack of formal introduction of the participants and an opening statement of the referral question—" were false. *Id.*

Principal Koetke (P.S. 77), conducted an observation of Plaintiff on or about April 26, 2013, regarding a student Individual Education Plan ("IEP"). *Id.* ¶ 24. Plaintiff

received another unsatisfactory rating, and similar to the January 24, 2013 observation, alleged that the reasons proffered were false. *Id.*

### 3.  Discontinuance of Plaintiff's Probationary Service

Based on the above "U" rated observations, on or about June 14, 2013, Principal Emerick (PS198) and Principal Koetke rated Plaintiff an overall unsatisfactory for the 2012 - 2013 school year, and a discontinuance of Plaintiff's probationary service was recommended *See* Amended. Compl. ¶ 9.  Plaintiff alleges "there was no evidence to support Dr. Fleishman[] and Dr. Koetke's 'U' observation" and that the "U" observations "were given to [Plaintiff] in an effort to paper her file and ultimately terminate her."  Amend. Compl. ¶ 25.

Plaintiff asserts that her cases from PS77M composed on less than 1% of her total case load . . .[y]et Plaintiff was discriminated for pretextual reasons and upon false information written in her 'U' rating sheets."  *Id.* ¶ 29.  Plaintiff alleges her position was replaced by a non-Chinese psychologist. *Id.* ¶ 34.

On or about December 23, 2013, Plaintiff filed a charge of national origin discrimination and hostile work environment with the U.S. Equal Employment Opportunity Commission ("EEOC"), bearing EEOC Charge No. 520-2014-00806.  *See* December 23, 2013, EEOC Charge No. 520-2014-00806, annexed to the Declaration of Tanya N. Blocker, dated June 26, 2015 ("Blocker Decl."), Ex. "A."  Plaintiff received a Notice of Right To Sue (hereinafter "Right to Sue Letter") for EEOC Charge No. 520-2014-00806 and commenced this action on November 10, 2014, in the New York State Supreme Court Kings County, bearing Index No. 510574/2014.  *See* Amended Compl. ¶ 2; Docket No. 1.

**ARGUMENT**

**POINT I**

**THE COMPLAINT IS BARRED, IN PART, BY THE APPLICABLE STATUTE OF LIMITATIONS**

Title VII claims brought in New York must be filed with the EEOC within 300 days of the occurrence of the alleged act of discrimination, or they are time-barred. *See National Railroad Passenger Corp. ("AMTRAK") v. Morgan*, 536 U.S. 101, 108-109 (2002); *Tewksbury v. Ottaway Newspapers, Inc.*, 192 F.3d 322, 328 (2d Cir. 1999); 42 U.S.C. § 2000e-5(e)(1). Plaintiff's charge of discrimination was filed with the EEOC on December 23, 2013. *See* Exhibit "A." Three hundred days before that was February 26, 2013. Therefore, any claim accruing before February 26, 2013 is barred by the applicable 300-day limitations period.

Plaintiff alleges that between December 2011 through January 2013, "Plaintiff received 5 unsatisfactory observational reports (dated 12/9/2011, 3/22/2012, 12/14/2012, 1/24/2013)" resulting in the discontinuance of Plaintiff's probationary service *See* Amend. Compl. ¶¶ 6 (pgs. 2 – 3), 9, 32. Plaintiff has failed to plausibly plead facts demonstrating that these unsatisfactory observations were issued under circumstances giving rise to an inference of discrimination based on Plaintiff's national origin. In any event, to the extent that Plaintiff claims that she was subjected to biased observations, memos, letters to file and/or discipline that occurred prior to February 26, 2013, such a Title VII claim must be dismissed as time barred. *See Hernandez v. Kellwood Co.*, 2003 U.S. Dist. LEXIS 17862, *46 (S.D.N.Y. Oct. 8, 2003) (unwarranted negative evaluations are discrete acts); *Gobin v. N.Y. City Health & Hosp. Corp.*, 2006 U.S. Dist. LEXIS 48952, *11 (S.D.N.Y. July 19, 2006)("demotion in February 2003 and the false Statement of Charges on March 19, 2003 are discrete acts that occurred at identifiable points in time outside the limitations period.").

Plaintiff also alleges, without giving an exact date, that she was humiliated and degraded based on her Chinese accent. *See* Amend.. Compl. ¶ 10. While it is Defendant's position that these alleged comments are insufficient to plausibly raise an inference of animus based on Plaintiff's national origin or otherwise constitute adverse employment actions, to the extent that any comments occurred prior to February 26, 2013, they too must be dismissed as time barred.

## POINT II

### THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF NATIONAL ORIGIN DISCRIMINATION UNDER TITLE VII

Plaintiff alleges that Defendant subjected her to disparate treatment because of her national origin. *See* Amend. Compl. ¶¶ 7 (pg. 2), 8 (pg. 3), 9, 13,17 – 26, 29 - 33. Specifically, Plaintiff appears to allege that the discriminatory treatment consisted of (1) "biased memos, letters to the file[,] discipline," and "micro management and microscopic scrutiny" (*id*. ¶¶ 8 (pg. 3), 13); (2) unfavorable treatment compared to Plaintiff's alleged colleague, Dr. Rosen in that: Dr. Rosen resided in a "bigger" "air-condition[ed]" office than Plaintiff and was not assigned to door monitoring duties during fire-drills while Plaintiff was assigned to such tasks (*id*. ¶ 31); (3) assigning the office adjacent to Plaintiff's as the music room over Plaintiff's objection and with knowledge that Plaintiff conducted "all her evaluations and IEP meetings at her office" (*id*. ¶ 14); (4) assigning Plaintiff the highest amount and most difficult cases, despite her part-time status (*id*. ¶ 19); (5) verbally harassing and humiliating Plaintiff by ending her sentence with ". . . it's because you are Chinese," and pointing out Plaintiff's accent stating: "Say it louder!" and ". . . it's because you are Chinese" at meetings before Plaintiff's colleagues (*id*.) ¶ 10; (7) giving Plaintiff negative performance evaluations for the 2011 – 2012  and 2012 - 2013 school year (*id*. 6 (pgs. 2 – 3), including, falsely accusing Plaintiff of noncompliance with protocol during IEP

meeting and observations and failing to finalize relevant documents in a timely fashion[5] (*id.* ¶¶ 22 – 24; and (8) discontinuing Plaintiff's probationary employment. *Id.* 8 (pg. 3), 9, 32. As discussed below, because Plaintiff has failed to allege sufficient facts to state a claim of national origin discrimination that is plausible on its face, her claims of disparate treatment discrimination must be dismissed.

## A.  Applicable Pleading Standards

Dismissal pursuant to FRCP Rule 12(b)(6) is warranted where a complaint fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when that plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

In determining whether a complaint pleads sufficient facts to state a plausible claim for relief, the reviewing court must engage in a "context-specific" analysis drawing on its own judicial experience and common sense. *Id.* A complaint which merely asserts "a sheer possibility that a defendant has acted unlawfully" or that simply contains "bald assertion and conclusions of law" will not suffice. *Id.* Rather the facts pleaded "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S at 555. Reading this pleading standard together with the Rule 12(b)(6) admonition that courts may neither (i) "assume that the [Plaintiff] can prove facts that [she] has not alleged," *Elec. Comm. Corp. v. Toshiba America Consumer Prods.*, Inc., 129 F.3d 240, 243 (2d Cir. 1997) (*quoting Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council*

---

[5] Of course, any Title VII claims based upon these discrete events are time-barred. *See* Point I, above.

*of Carpenters*, 459 U.S. 519, 526 (1983)) (alteration in original), nor (ii) "accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citation omitted). This plausibility standard is also applicable in the context of a discrimination claim.  While "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a *prima facie* case of discrimination" the elements of the prima facie case must at least "provide [a helpful] outline of what is necessary to render [a plaintiff's] claims for relief plausible."  *Ray v. Weit*, No. 13 CV 6416 (RRM) (CLP), 2015 U.S. Dist. LEXIS 35410 *6 (E.D.N.Y. Mar. 20, 2015) *citing Shallow v. Scofield*, No. 11-CV-6028 (JMF), 2012 U.S. Dist. LEXIS 135697, 2012 WL 4327388, at *3 (S.D.N.Y. Sept. 21, 2012) (internal quotation marks and alternations omitted) (alterations in original).  Thus, to defeat a motion to dismiss, the elements of a *prima facie* case are instructive.  *Id.* at 7.  "Courts [therefore] consider these elements in determining whether there is sufficient factual matter in the complaint which, if true, gives Defendant fair notice of Plaintiff's claim and the grounds on which it rests."  *Id. quoting Murphy v. Suffolk Cnty. Cmty. Coll.*, No. 10-CV-0251, 2011 U.S. Dist. LEXIS 136983, 2011 WL 5976082, at *5 (E.D.N.Y. Nov. 29, 2011).  "Formulaic recitation of the elements of a cause of action," however, will not satisfy the pleading threshold.  *Twombly*, 550 U.S. at 555.

Turning to the case at bar, Plaintiff's Amended Complaint should be dismissed in its entirety, as the Amended Complaint fails to state a plausible claim of disparate treatment discrimination on the basis of Plaintiff's Chinese origin.

**B.    Plaintiff Has Failed To Plead Sufficient Facts To Establish A Plausible Claim Of Disparate Treatment Discrimination**

Employment discrimination claims asserted under Title VII are appropriately analyzed under the *McDonnell Douglas* burden-shifting analysis.  *See Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010).  Elements of a *prima facie* case of discrimination based on

national origin requires that a plaintiff demonstrate: (1) membership to a protected class; (2) the plaintiff is qualified for the position held; (3) suffered an adverse employment action; and (4) under circumstances giving rise to an inference of discrimination. *Ray,* 2015 U.S. Dist. LEXIS 35410 *8 – 9, *citing James v. Countrywide Fin. Corp*., 849 F. Supp. 2d 296, 308 (E.D.N.Y. Feb. 2, 2012) (citing *Cruz v. Coach Stores, Inc*., 202 F.3d 560, 565 (2d Cir. 2000)). Where an inference of discrimination is based on allegations of disparate treatment, a plaintiff must allege that comparator individuals outside of her protected class were treated more favorably than the plaintiff. *See Beauchat v. Mineta*, 257 Fed. Appx. 463 (2007). Comparator must be "similarly situated to the plaintiff in 'all material respects,' [meaning] they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Thompson v. City of New York*, No. 12 CV 8034 (PAE), 2013 U.S. Dist. LEXIS 172993 *29-30 (S.D.N.Y. December 9, 2013) *quoting Ruiz*, 609 F.3d at 493-94 (2d Cir. 2010).

The present Amended Complaint fails to allege sufficient facts for this Court to infer that Plaintiff's contention that any putative adverse action occurred under circumstances giving rise to an inference of race or national origin discrimination. Thus, Plaintiff's disparate treatment discrimination claims must be dismissed.

### 1. Failure to Raise an Inference of Discrimination

The Amended Complaint is utterly deficient in factual support to demonstrate a nexus between Defendant BOE's conduct and any discriminatory motivation attributing the challenged conduct to Plaintiff's Chinese origin. Other than alleging that she is Chinese and that she worked with a non-Chinese employee, Plaintiff has failed to allege any plausible facts suggesting that she suffered an adverse action because of her national origin. *See Tsang-Adler v. City of New York*, 12 CV 394 (SJ) (MDG), 2013 U.S. Dist. LEXIS 53229, *6-7 (E.D.N.Y. April 12, 2013)

(The mere allegation that plaintiff was the only employee of Asian or Chinese descent at her place of employment deemed conclusory and "patently insufficient").

First, allegations of remote references to Plaintiff's accent, alone, particularly in the performance evaluation process are insufficient to establish an inference of anti-Chinese animus. *See Valtchev v. City of N.Y.*, No. 06-CV-7157 (NRB), 2009 U.S. Dist. LEXIS 79815 *29 - 30 (S.D.N.Y. Aug. 31, 2009), *aff'd,* 400 Fed. Appx. 586 (2d Cir. 2010) (comments made in conjunction with evaluations concerning Plaintiff's difficulty with the English language were found not to create an inference of discrimination).

While a plaintiff may demonstrate indicia of discrimination by providing evidence of degrading or invidious comments made by her employer relating to the plaintiff's protected class, here, Plaintiff merely alleges—in conclusory fashion—that Dr. Fleishman 1) frequently made comments about Plaintiff's accent in a "derogatory and humiliating manner", 3) "was rude and very impatient" during Plaintiff post observation meeting, 4) ended her sentence to Plaintiff with ". . . it's because you are Chinese," and 5) allegedly pointed out Plaintiff's accent stating: "Say it louder!" and ". . . it's because you are Chinese." Amend. Compl. ¶ 10. Absent factual context as to when and where the comments were made in relation to the adverse employment action, they amount to nothing more than stray remarks, "far too vague and ambiguous to support a Title VII claim." *Valtchev*, 2009 U.S. Dist. LEXIS 79815 *31, *aff'd,* 400 Fed. Appx. 586 (2d Cir. 2010); *see also*, *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) ("[T]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination."). The Amended Complaint merely alleges "isolated derogatory remarks by [Dr. Fleishman which] alone do not raise an inference of discrimination." *Gonzales v. Allied Barton Sec. Servs.*, No. 08-Civ-9291

(RJS) (RLE), 2010 U.S. Dist. LEXIS 101846 * 13 (S.D.N.Y. Sept. 7, 2010) (*citing Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 2001). Plaintiff pleads no facts evidencing that the alleged derogatory comments accompanied additional evidence of discrimination or a nexus between the comments and termination of Plaintiff's probationary service. *Id.*

Indeed, given Plaintiff's position as a school psychologist, her communications with colleagues and students are crucial and thus, the evaluation of Plaintiff's communication skills remains more than appropriate and well within bounds of critiquing by Plaintiff's observers. *Valtchev*, 400 Fed. Appx. at 591 (comments in the evaluation context such "[Plaintiff's] English [as] 'not good enough' because [they] 'learned it in another country'" failed to raise an inference of discriminatory animus, particularly where the "evaluations provide detailed accounts of deficiencies in [plaintiff's] classes including difficulty with teaching to the level of his special needs students, developing a topic thoroughly, and incorporating activities into his lesson plan, all of which provide an independent basis for the 'unsatisfactory' markings."). *See also De La Peña v. Metro. Life Ins. Co.*, 953 F. Supp. 2d 393, 413 (E.D.N.Y. 2013) ("The fact that the Plaintiff was the only Filipino in his office is not sufficient to connect the Defendants' actions and behavior to a discriminatory intent."), *aff'd*, 552 Fed. App'x 98 (2d Cir. 2014) (affirming dismissal of the plaintiff's Title VII discrimination claims, on the basis, inter alia, that the "plaintiff's bald assertions of discrimination — unsupported by any meaningful comments, actions, or examples of similarly-situated persons outside of plaintiff's protected class being treated differently — were implausible and insufficient to survive a motion to dismiss.").

Second, as discussed in Point I, any Title VII claims based upon Plaintiff's negative observation reports and/or discrete events that took place prior to February 2013 are

time-barred.  Concerning Plaintiff's overall unsatisfactory annual performance and review report

for the 2012 -2013 school year, other than disputing the truthfulness of same, the Amended

Complaint adduces no facts as to how Plaintiff's Chinese heritage was the impetus for her

unsatisfactory ratings and/or her termination "beyond mere speculation and conjecture." *See*

*Bickerstaff v. Vassar College,* 196 F.3d 435, 448 (2d Cir. 1999).  Plaintiff alleges that

notwithstanding having three overall satisfactory annual performance ratings in the prior years,

she received "biased discipline," "erroneous" and "patently false" observations resulting in an

overall "U" rating . . . for the school year 2012 – 2013"  Amended Compl. ¶¶ 9, 17, 21, 22, 25.

Mere disagreement by an employee with a negative performance rating/review by her employer

does not raise an inference of discriminatory intent.  *Ricks v. Conde Nast Publs.*, 6 Fed. App'x

74, 78 (2d Cir. 2001).  Negative performance reviews "do not, in themselves, support an

inference of discrimination," particularly where the negative reviews are "themselves facially

neutral." *Tu v. Oppenheimerfunds, Inc.*, No. 10 Civ 4971 (PKC), 2012 U.S. Dist LEXIS 19867 *

22 (S.D.N.Y. Feb. 16, 2012).  Nowhere in the Amended Complaint does Plaintiff allege any

actionable derogatory comments or that Defendant took any action in connection with the 2012 –

2013 annual evaluation suggesting national origin discrimination.  *See* Amend. Compl.

generally.  Such a facially neutral review, albeit it negative—without more—fails to suggest

discriminatory animus.  *Id.*  Moreover, "[t]he mere fact of past satisfactory performance, [by

Plaintiff] followed by negative feedback is not suggestive of impermissible animus," nor is

Plaintiff's complaints of undue scrutiny.  *Missick v. City of New York*, 707 F. Supp. 2d 336, 350 -

351 (E.D.N.Y. March 22, 2010).  As noted *supra*, alleged references to Plaintiff's accent and/or

communications skills are more than appropriate in the performance evaluations context, and all

of Plaintiff's allegations either fall within that purview or amount to non-actionable stray remarks.

## 2. Failure To Identify Similarly Situated Comparators

While Plaintiff appears to allege differing or favorable treatment of another non-Chinese psychologist, Dr. Rosen, as compared to Plaintiff, because Plaintiff fails to plausible plead facts that Dr. Rosen is a similar situated comparator to Plaintiff in all material respects the assertion is inapposite. Indeed, the Amended Complaint omits that any meaningful comparators to Plaintiff where "(1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct" as Plaintiff by which "a prudent person would think them roughly equivalent." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 697 (S.D.N.Y. Sept. 26, 2011); *see also Deprima v. City of New York Dep't of Educ.*, No. 12 CV 3626 (MKB), 2014 U.S. Dist. LEXIS 37866 (E.D.N.Y. Mar. 20, 2014) (dismissing the African American plaintiff's claim that she suffered race-based discrimination due to the alleged comment that her blonde hair and her skin tone did not match).

Significantly, the Amended Complaint is devoid and woefully unspecific of any facts concerning Dr. Rosen's: i) employee status, i.e. probationary or permanent, ii) duties and responsibilities, iii) case assignments and how they fared less difficult compared to Plaintiff's, and iv) observational and annual evaluation process/reports and the circumstances surrounding same. *See* Amend. Comp. ¶ 15, 31; *see also, Thompson,* 2013 U.S. Dist. LEXIS 172993, *29 - 30 (In dismissing the action, the court held that the sparse allegations as to the comparators "f[e]ll measurably short of that necessary to enable the Court to conclude that a prudent person might think them roughly equivalent" to plaintiff.). (*internal quotations omitted*)). Notably, no concrete facts exist concerning: 1) disparities in observations or disciplines between Plaintiff and

Dr. Rosen: 2) Dr. Rosen's overall performance ratings and/or observations, and 3)—if subpar—whether cumulatively such substandard performance resulted in discipline or served as a possible basis for discontinuance of probationary service. *See Ray,* 2015 U.S. Dist. LEXIS 35410 at \*10 (E.D.N.Y. Mar. 20, 2015) *citing Risco v. McHugh*, 868 F. Supp. 2d 75, 100 (S.D.N.Y. June 14, 2012). In light of *Iqbal*, Plaintiff's bald assertions of discrimination are insufficient to survive a motion to dismiss. *See, e.g., Jackson v. County of Rockland*, 450 Fed. Appx. 15, 19 (2d Cir. 2011) (summary order) ("[B]ald assertions of discrimination and retaliation, unsupported by any comments, actions, or examples of similarly-situated individuals outside of [plaintiff's] protected class being treated differently, from which we could infer that the defendants possessed a discriminatory or retaliatory motive, are implausible and insufficient to survive a motion to dismiss."); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 581 (S.D.N.Y. 2011) (plaintiff's claim failed where it was "nothing more than the recitation of a false syllogism: (1) I am (insert name of a protected class); (2) something bad happened to me at work; (3) therefore, it happened because I am (insert name of protected class)").

Instead, Plaintiff offers conclusory allegations and characterizations of selective treatment—that Dr. Rosen, unlike Plaintiff, maintained a larger air-conditioned office, received less complicated assignments, and was not assigned to trivial tasks such as door monitoring during a fire drill—that even if true, fails the pleading standard demonstrating Dr. Rosen as an apt comparator to Plaintiff. *See Thompson,* 2013 U.S. Dist. LEXIS 172993 \*29 - 30; *Ray,* 2015 U.S. Dist. LEXIS 35410 at \*11. (E.D.N.Y. Mar. 20, 2015). Moreover, Plaintiff does not allege that Defendant BOE or its employees took any action to suggest their conduct was motivated by discriminatory animus.

Finally, as explained in detail *infra*, the Amended Complaint omits any plausible facts demonstrating pretext.

## C. BOE's Legitimate, Nondiscriminatory Reason For Plaintiff's "U" Rating and Termination

Assuming, *arguendo*, that Plaintiff has pleaded sufficient facts for a prima facie claim of national origin discrimination, survival of a motion to dismiss is only possible should Plaintiff plead facts rebutting the "legitimate, nondiscriminatory rationale [offered by the BOE for its] actions." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)

Here, the BOE's legitimate non-discriminatory reason for both Plaintiff's overall "U" rating for the 2012 – 2013 school year and discontinuance of her probationary period was Plaintiff's substandard job performance. To rebut the BOE's proffered reason as pretextual, in addition to Plaintiff's alleged past satisfactory performance reviews and dissatisfaction with her negative ratings for the 2012 – 2013 school year, Plaintiff alleges that "less than 1% of [her] total[] work caseload" came from PS77M to which Principal Koetke was formally the Assistant Principal and upon becoming principal of PS198M, Principal Koetke[6] terminated Plaintiff's employment. Amend. Compl. ¶¶ 10, 28 – 29.

As an initial matter, Plaintiff's subjective belief that her negative performance evaluations were unfounded or biasedly driven is insufficient to demonstrate pretext absent some other indicia of discrimination at play. *See Hawkins v. City of N.Y.,* No. 99-Civ-11704 (RWS), 2005 U.S. Dist. LEXIS 15898, *27 (S.D.N.Y. Aug. 8, 2005). Short of Plaintiff's subjective belief that her annual review was driven by national origin bias, the lack of a showing of an inference of national origin discrimination is further buttressed by Principal Koetke's

_____

[6] Plaintiff erroneously identifies Principal Koetke as principal of PS198. For the 2012 -2013 school year, Ms. Koetke's title changed from Assistant Principal of PS77 to Principal of PS. 77.

participation in both Plaintiff's unsatisfactory <u>and</u> satisfactory annual performance reviews. *See* Amend. Compl. ¶¶ 9, 25, 28. While not dispositive, "it is difficult to impute to an invidious motivation that would be inconsistent with [Principal Koetke's prior evaluation of Plaintiff]." *Daniel v. T&M Prot. Res. LLC*, No. 13 CIV 4384, 2015 U.S. Dist. LEXIS 20051 *52 (S.D.N.Y. Feb. 19, 2015) (*citing Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 137 (2d Cir. 2000)). Tellingly, Plaintiff alleges no facts of biased discipline or evaluation concerning Principal Koetke's satisfactory rating/review of Plaintiff for the 2011 – 2012 school year, only Principal Koetke's unsatisfactory review in 2012 – 2013. Such facts undermine any inference that Plaintiff's Chinese heritage—rather than her subpar performance—played a role in the BOE's negative review and subsequent termination of Plaintiff's employment. *See also Daniel*, 2015 U.S. Dist. LEXIS 20051, at *53 - 54 (dismissing plaintiff's national origin claim based on the "same actor inference" doctrine, noting the difficulty in inferring discrimination where the same person that hired plaintiff also participated in the firing) (*citing Ruane v. Cont'l Cas. Co.*, No. 96 Civ. 7153 (LBS), 1998 U.S. Dist. LEXIS 8141, *8 (S.D.N.Y. June 3, 1998) ("[I]t is suspect to claim that the same manager who hired a person in the protected class would suddenly develop an aversion to members of that class.").

Because Plaintiff has failed to allege plausible facts of a similarly situated comparator or, alternatively, allege facts demonstrating any indicia of discrimination in the BOE's decision to discontinue Plaintiff's probationary service, Plaintiff's national origin claim should be dismissed in its entirety.

**THE COMPLAINT FAILS TO PLAUSIBLY STATE A CLAIM FOR A HOSTILE WORK ENVIRONMENT**

Plaintiff also alleges that she was subjected to a hostile work environment because of her national origin based on the same alleged actions giving rise to Plaintiff's disparate treatment discrimination claim.  *See* Amend. Compl., *generally*.  For the reasons stated above, Plaintiff's hostile work environment claim is similarly ripe for dismissal, as the the Amended Complaint fails to satisfy the *Iqbal* and *Twombly* pleading standard.

A claim for hostile work environment is had were a plaintiff plead facts that would tend to show that the conduct complained: "(1) is objectively severe or pervasive—that it, . . .creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected class]."  *Daniel v. T&M Prot. Res. LlC*, No. 13 Civ. 4384 (PAE), 2015 U.S. Dist. LEXIS 20051 (S.D.N.Y. Feb. 19, 2015)(*internal citation and quotations omitted*); *see Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996) (citation and internal quotations omitted); *see also Terry v. Ashcroft*, 336 F.3d 128, 147-48 (2d Cir. 2003).  As with any other claim of discrimination, a plaintiff asserting a hostile work environment claim must demonstrate that she was subjected to the alleged discriminatory conduct because of her membership in a protected class.  *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001); *Richardson v. New York State Dep't of Corr. Serv.,* 180 F.3d 426, 440 (2d Cir. 1999).

Again, other than conclusory, unspecific allegations that Dr. Fleishman commented on Plaintiff accent "in a derogatory and humiliating manner," "casted [Plaintiff] as incompetent," "[was] rude and very impatient," and subjected Plaintiff to discipline, "micro

management and microscopic scrutiny," the Amended Complaint lacks plausible facts sufficient to meet the severe or pervasive threshold for a plausible claim of hostile work environment. Amend. Compl. ¶¶ 10, 12, 13, 18; *see Daniel*, 2015 U.S. Dist. LEXIS 20051 at *28 (In dismissing a hostile work environment claim, the court found that there "must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments.") (*internal quotations omitted*). Plaintiff has alleged no facts to suggest that the Defendant's alleged actions were motivated by discriminatory animus directed at Plaintiff because of her race or national origin. As discussed above, Plaintiff neither pleads concrete facts of disparities in discipline and evaluations; nor, facts showing any demeaning or discriminatory comments sufficient to raise an inference that the work atmosphere cause by the claimed incident was so "extraordinary severe" or "sufficiently continuous and concerted" to have altered the condition of that work atmosphere and existed *because of* her Chinese heritage. *Bickerstaff v. Vassar College*, 354 F. Supp. 2d 276, 283 (S.D.N.Y. 2004) (Isolated instances of harassment ordinarily do not rise to this level.). *See Fleming v. MaxMara USA, Inc.*, 371 Fed. App'x 115, 119 (2d Cir. 2010) (plaintiff's allegations "that defendants wrongly excluded her from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her" did "not support a finding of a hostile work environment that is pervasive or severe"). Furthermore, to establish a claim for hostile work environment there must be a showing that the conduct alleged created an environment that was not only subjectively perceived as abusive, but could be objectively perceived as hostile and abusive. *See Daniel*, 2015 U.S. Dist. LEXIS 20051 at ** 30 - 31. The Amended Complaint as pleaded does neither.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that its motion to dismiss be granted and that it be granted such other and further relief as the Court deems just and proper.

Dated:         New York, New York
                  June 26, 2015

                                    **ZACHARY W. CARTER**
                                    Corporation Counsel of the
                                      City of New York
                                    Attorney for Defendant
                                    100 Church Street, Room 2-173
                                    New York, New York 10007
                                    (212) 356-3177
                                    tblocker@law.nyc.gov


                          By:      /s/ *Tanya N. Blocker* _____
                                    Tanya N. Blocker
                                    Assistant Corporation Counsel

Tanya N. Blocker,
Bruce Rosenbaum,
   Of Counsel.

Shirley Bi,
Summer Student Intern,
   On the Brief.